IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SYREETTA W. D., | ) |
|       Plaintiff, | ) ) ) |
| v. | ) ) ) Case No. 20-cv-00530-JED-SH |
| KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security, | ) ) ) |
|       Defendant. | ) ) |

**REPORT AND RECOMMENDATION**

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Pursuant to 42 U.S.C. § 405(g), Plaintiff Syreetta W. D. requests judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability benefits under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434, 1381-1383f. For the reasons explained below, the undersigned **RECOMMENDS** that the Commissioner's decision denying benefits be **AFFIRMED**.

**I.   Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A) (regarding disabled individuals). The impairment(s) must be "of such severity that [the claimant] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work

---

[1] Effective July 9, 2021, pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. §§ 404.1520, 416.920. To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. pt. 404, subpt. P, app. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do her past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the [administrative] record as a whole, including anything that may undercut or detract from the ALJ's findings in order to

determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.   Background and Procedural History

Plaintiff applied for Title II disability benefits on October 24, 2018, and for Title XVI disability insurance benefits on December 1, 2018, with a protective filing date of October 23, 2018. (R. 104, 206-31.) In her applications, Plaintiff alleged she has been unable to work since August 1, 2017, due to conditions including fibromyalgia, anxiety, arm surgery, and vertigo. (R. 208, 216, 226, 244.) Plaintiff was 46 years old at the time of the ALJ's decision. (R. 118, 208.) Plaintiff has two years of college with a child development associate ("CDA") credential; she has past relevant work as a childcare worker, customer service representative, and in-home childcare provider. (R. 27-31, 41.)

Plaintiff's claims for benefits were denied initially and upon reconsideration. (R. 123-31, 134-44.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which the ALJ conducted on December 16, 2019. (R. 20-46, 145-46.) The ALJ issued a decision on February 7, 2020, denying benefits and finding Plaintiff not disabled. (R. 101-18.) The Appeals Council denied review on August 13, 2020 (R. 1-5), rendering the Commissioner's decision final, 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed this appeal on October 15, 2020 (ECF No. 2), within 65 days of that order. *See* 20 C.F.R. § 422.210(c).

## III.   The ALJ's Decision

In her decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through December 31, 2022. (R. 104, 106.) The ALJ then found at step one that Plaintiff had not

3

engaged in substantial gainful activity since the alleged onset date of August 1, 2017.[2] (R. 106.) At step two, the ALJ found that Plaintiff had the following severe impairments: (1) vertigo; (2) major depressive disorder; and (3) anxiety disorder. (R. 106-08.) At step three, the ALJ found Plaintiff's impairments had not met or equaled a listed impairment. (R. 108-09.)

After evaluating the objective and opinion evidence, as well as Plaintiff's testimony, the ALJ concluded that Plaintiff had the RFC to perform "sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)," with the following additional limitations:

> [N]o climbing ropes, ladders, or scaffolds. Occasionally climb ramps and stairs, stoop, crouch, crawl, kneel, and balance on uneven, moving, or narrow surfaces. Frequently handle and finger with the right upper extremity. Understand, remember, and carry out simple and detailed, but not complex, tasks (SVP 1-4). Occasional interaction with coworkers, supervisors, and the general public. No work involving any exposure to extreme cold temperatures, unprotected heights, or dangerous moving machinery.

(R. 109.) The ALJ then provided a recitation of the evidence that went into this finding. (R. 109-16.) At step four, the ALJ found Plaintiff unable to perform her past relevant work as a childcare worker, customer service representative, or in-home childcare provider. (R. 116.) Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as clerical sorter, filler, and assembler. (R. 116-17.) Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 117-18.)

## IV. Issues

Plaintiff raises three allegations of error in her challenge to the denial of benefits: (1) the ALJ's assessment at steps two through five was flawed, because it failed to incorporate all of Plaintiff's impairments; (2) the ALJ failed to properly consider medical opinions contained in the

---

[2] The ALJ noted that Plaintiff's records show $1,022 in earnings in the fourth quarter of 2017 but found they did not rise to the level of substantial gainful activity. (R. 106.)

4

record; and (3) the ALJ failed to perform a proper "consistency/credibility" analysis. (ECF No. 16 at 3-11.) The undersigned finds these arguments unavailing.

V. Analysis

    A. The ALJ Adequately Accounted for Plaintiff's Impairments

        1. Step Two

First, Plaintiff argues the ALJ erred at step two by failing "to determine whether Claimant's elbow surgery . . . was a severe impairment, a non-severe impairment, or whether it was not medically determinable." (*Id.* at 4.) This argument is meritless. The claim that an ALJ should have found additional impairments is "easily dispose[d] of" when the ALJ has already made an explicit finding that the claimant suffers from severe impairments, as "[t]hat was all the ALJ was required to do in that regard." *Brescia v. Astrue*, 287 F. App'x 626, 629 (10th Cir. 2008) (unpublished) (quoting *Oldham v. Astrue*, 509 F.3d 1254, 1256 (10th Cir. 2007)).[3]

> Once an ALJ has found that a claimant has at least one severe impairment, a failure to designate another disorder as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps "consider[s] the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."

*Id.* (quoting 20 C.F.R. §§ 401.1523, 416.923); *see also Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) ("the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe"); *Bevel v. Saul*, No. CIV-18-1172-STE, 2019 WL 4738275, at *2 (W.D. Okla. Sept. 27, 2019) (reaching a similar conclusion where the ALJ made no findings at step two regarding the plaintiff's alleged chronic pain disorder and obesity).

---

[3] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

5

Here, the ALJ found Plaintiff suffered from three severe impairments. (R. 106.) She then evaluated Plaintiff's elbow surgery as part of her consideration of the combined effects of Plaintiff's alleged impairments at step four. (R. 112-13.) The undersigned Magistrate Judge finds no error.

### 2. Step Three

Second, Plaintiff contends the ALJ should have considered Listing 1.02 (major dysfunction of joints) at step three to account for Plaintiff's purported elbow and wrist limitations. (ECF No. 16 at 4.) While Plaintiff argues Listing 1.02 should have been "considered," she does not assert the consideration would have made any difference in the disability determination—that is, Plaintiff does not argue that the ALJ could have found the listing satisfied had it been considered. As the Tenth Circuit has held, "an ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). Therefore, even if the ALJ should have considered Listing 1.02 at step three,[4] the courts will uphold her finding that no listings were met if, "based on material the ALJ did at least consider . . ., we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id.* (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)).

Listing 1.02 states:

> *Major dysfunction of a joint(s) (due to any cause):* Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis,

---

[4] For purposes of this analysis, the undersigned will assume—without making any definitive findings—that the ALJ could have found Plaintiff's purported elbow and wrist limitations to be medically determinable severe impairments. "At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition 'listed in the appendix of the relevant disability regulation.'" *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)).

instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (*i.e.,* hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or

B. Involvement of one major peripheral joint in each upper extremity (*i.e.,* shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.[5]

20 C.F.R. pt. 404, subpt. P, app. 1, 1.02. As with all listings, this provision describes an impairment that is automatically disabling because it is "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a). This is a much higher standard than that applicable at steps four and five. *See Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) ("The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard.").

There is no evidence in the record that would support a finding that Plaintiff meets Listing 1.02. First, Plaintiff has pointed to no evidence demonstrating that her left wrist or right elbow limitations may be "[c]haracterized by [a] gross anatomical deformity" of the type described in the listing. (ECF No. 16 at 4.) Moreover, Plaintiff offers no medically acceptable imaging showing joint space narrowing, bony destruction, or ankylosis of the affected joints. (*Id.*) Imaging of

---

[5] An inability to perform fine and gross movements effectively is defined as follows: "[A]n extreme loss of function of both upper extremities; *i.e.,* an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level." 20 C.F.R. pt. 404, subpt. P, app. 1, 1.00(B)(2)(c).

Plaintiff's left wrist was normal (R. 339-40, 399, 420), and the record does not contain imaging of Plaintiff's right elbow post-surgery. Lastly, the record does not demonstrate that Plaintiff is unable to effectively perform fine and gross movements as defined in 1.00(B)(2)(c). (R. 399, 499-503.) The ALJ considered evidence regarding Plaintiff's wrist and elbow function (R. 112-13) and found Plaintiff could frequently handle and finger with her right upper extremity and that she had no limitations on her left side (R. 109). As noted below, this finding was supported by substantial evidence. Such a finding also "conclusively preclude[s]" Plaintiff's qualification under Listing 1.02. *Henderson v. Astrue*, 383 F. App'x 700, 701 (10th Cir. 2010) (unpublished) (restating holding from *Fischer-Ross*, 431 F.3d at 734-35). Consequently, the undersigned finds no reversible error at step three.[6]

### 3. Steps Four and Five

Plaintiff argues the ALJ's RFC determination was flawed because it was internally inconsistent (ECF No. 16 at 3), failed to incorporate a limitation accounting for her elbow surgery (*id.* at 4-5), and failed to include a mental limitation for concentration, persistence, and pace (*id.* at 5).

First, Plaintiff maintains that the RFC—which limits her to understanding, remembering, and carrying out simple and detailed, but not complex, tasks—does not allow for jobs with Specific Vocational Preparation ("SVP") levels of three or four. (*Id.* at 3.) Even if Plaintiff is correct, there would be no basis to reverse. At step five, the ALJ found Plaintiff could perform three jobs that exist in significant numbers in the national economy—clerical sorter, filler, and assembler. (R.

---

[6] Plaintiff cites *Williams v. Berryhill*, 682 F. App'x 665, 667-68 (10th Cir. 2017) (unpublished) for the proposition that the ALJ's failure to consider Plaintiff's wrist and elbow issues at step three was reversable error. Unlike this case, in *Williams*, substantial record evidence supported the factors of the proposed listing and the court was unpersuaded that findings elsewhere in the ALJ's decision negated the listing. *Id. Williams* does not require the undersigned to recommend reversal.

8

116-17.) All three jobs have an SVP level of two. *See* Dictionary of Occupational Titles ("DOT") §§ 209.587-010, 731.685-014, 713.687-018 (4th ed. 1991). Plaintiff does not argue that she is incapable of performing these jobs based on her mental limitations, nor does she dispute the ALJ's finding that these jobs exist in significant numbers. Any purported error would, therefore, be harmless. *Cf. Stokes v. Astrue*, 274 F. App'x 675, 683-84 (10th Cir. 2008) (finding harmless error where two of the four jobs referenced at step five had excessive noise intensity, but the remaining jobs existed in significant numbers).[7]

Next, Plaintiff faults the ALJ for failing to include a "reaching" limitation in the RFC. (ECF No. 16 at 4.) The undersigned, however, finds the RFC sufficiently accounted for Plaintiff's physical limitations—including her alleged reaching limitation—and declines to reweigh the evidence. *See Bowman*, 511 F.3d at 1272. Particularly, the ALJ allowed for Plaintiff's physical limitations by restricting her to sedentary work (R. 109), which requires the lowest level of physical exertion necessary to maintain gainful employment. *See* 20 C.F.R. §§ 404.1567, 416.967 (sedentary work involves sitting, only occasional standing and walking, lifting no more than 10 pounds occasionally, and carrying small items). The ALJ's finding that no further restriction was required is supported by substantial evidence. By July 2, 2018, after surgery on her right elbow, Plaintiff was noted to have regained 90% of her elbow extension functionality. (R. 399 (Dr. Brian Chalkin observed that the extensor lag in Plaintiff's right elbow was "about 10 degrees").) Plaintiff

---

[7] Unlike *Stokes*, this is not a situation where the ALJ found that the level-appropriate jobs, <u>when combined with</u> other jobs, met the "significant numbers" test. Therefore, there is no reason to apply the "no reasonable factfinder" test to supply a missing dispositive finding. So, even if Plaintiff disputed whether the SVP-level-two jobs existed in significant numbers in the national economy, the Court would apply the much lighter "substantial evidence" standard. *Compare Trimiar v. Sullivan*, 966 F.2d 1326, 1332 (10th Cir. 1992) (applying the substantial-evidence test to an ALJ's finding of a significant number of jobs) *with Allen*, 357 F.3d at 1144-45 (finding the no-reasonable-factfinder test to apply where the numerical significance finding was not made by the ALJ but would be made, in the first instance, by the reviewing court).

reportedly "responded favorably to surgery," even though she lacked "the last few degrees of extension." (*Id.*) She regained "full flexion, full pronation and supination" and had "[n]o pain with active extension of the wrist and good power" with "just intermittent ache in the elbow." (*Id.*) Additionally, by December 2018, when she presented for her consultative examination ("CE") with Dr. Ashlin Paz, though Plaintiff reported "a minimum of 10% loss of function" from a September 2017 car accident, Dr. Paz noted no muscle atrophy or contracture, full grip strength in her left hand, and grip strength at 3/5 in her right. (R. 498-99.) Similarly, all notations regarding Plaintiff's range of joint motion in her elbows and wrists were normal, other than a 10-degree limitation in the extension of her right elbow. (R. 501-02.) The ALJ considered all this evidence.[8] (R. 112-14.) Considering the above, the undersigned holds that the RFC was supported by substantial evidence. To find otherwise would require the undersigned to step into the shoes of the ALJ and reweigh the evidence. Thus, the undersigned finds no error at step four. For the same reasons, the undersigned also finds no error in the ALJ's step-five analysis. (*See* ECF No. 16 at 4-5 (arguing the ALJ failed at step five by declining to include in her hypothetical to the VE a reaching limitation).)

Finally, without citing any record evidence, Plaintiff argues the RFC and step-five hypothetical to the VE were flawed because they failed to include a mental limitation for concentration, persistence, and pace. (*Id.* at 5.) This Magistrate Judge disagrees. The ALJ evaluated Plaintiff's pertinent symptoms, signs, and laboratory findings to determine whether she has "a medically determinable mental impairment(s)" at step two and rated the degree of Plaintiff's functional limitation in the four broad areas of functioning, including concentrating, persisting, and maintaining pace, at step three. (*See* R. 106-09.) *See also* 20 C.F.R. §§ 404.1520a(b)-(c),

---

[8] The ALJ did not specifically list Dr. Paz's finding on the extension limitation but noted a similar finding from Dr. Chalkin. (R. 113.)

10

416.920a(b)-(c). Then, at step four, the ALJ specifically considered medical opinions describing Plaintiff as having "decreased cognitive speed" and opining that she "might experience difficulty with concentration [and] persisting with difficult tasks" before finding the RFC accommodated her physical and mental impairments. (R. 115.) In the RFC, the ALJ limited Plaintiff to jobs that require she be able to "[u]nderstand, remember, and carry out simple and detailed, but not complex, tasks . . . ." (R. 109.) This analysis, and the resulting limitation, accounted for any measurable difficulties Plaintiff has in her ability to concentrate, persist, and maintain pace. *See Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) (recognizing that an ALJ can account for moderate limitations by limiting plaintiff to particular kinds of work activity, such as "simple tasks").

    **B.**    **The ALJ Adequately Considered the Medical Opinions**

Next, Plaintiff argues the ALJ failed to properly consider the record medical opinions, citing law that is inapplicable to this case.[9] (ECF No. 16 at 5-9.) The undersigned will, however, consider Plaintiff's arguments under the applicable regulations.

Under the current regulations, the ALJ does not give "any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . ." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions by considering the following factors: (i) the supportability of the opinion; (ii) the consistency of the opinion; (iii) the medical source's relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining

---

[9] Plaintiff argues the ALJ failed to correctly evaluate medical opinions under 20 C.F.R. §§ 404.1527 and 416.927. (ECF No. 16 at 5-6.) However, Plaintiff applied for Title II disability benefits on October 24, 2018, and for Title XVI disability benefits on December 1, 2018, with a protective filing date of October 23, 2018. (R. 104, 206-31.) Because 20 C.F.R. §§ 404.1527 and 416.927 apply to claims filed <u>before</u> March 27, 2017, the proper standard for the ALJ's evaluation of medical opinions is found in 20 C.F.R. §§ 404.1520c and 416.920c. Plaintiff acknowledges this error in her Reply. (ECF No. 22 at 2-3.)

relationship); (iv) the medical source's specialization; and (v) any other factors that tend to support or contradict the opinion. *Id.* §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion, and the ALJ must explain how both factors were considered. *See id.* §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ, however, is not required to explain how other factors were weighed absent two or more differing medical opinions about the same issue that are equally well-supported and consistent with the record. *Id.* §§ 404.1520c(b)(2)-(3), 416.290c(b)(2)-(3).

### 1. Dr. Ashlin Paz's Opinion

In her opening brief, Plaintiff only mentions Dr. Paz's opinion offhandedly—arguing that the ALJ "ignored that Claimant was noted to have reduced range of motion ('*ROM*') of the right elbow." (ECF No. 16 at 6 (citing R. 501).) As noted above, the ALJ did consider Plaintiff's potential elbow limitations in crafting the RFC, which was supported by substantial evidence. *See supra* § V(A)(3). And, as Plaintiff acknowledged in her opening brief, the ALJ "did . . . note the wrist and hand limitations [from Dr. Paz's examination] and accounted for them in her hypothetical questions and the RFC." (ECF No. 16 at 6.)

In reply, however, Plaintiff adds a new argument,[10] asserting that Dr. Paz's single notation regarding Claimant's ability to grasp tools, such as a hammer, constituted an opinion that the ALJ should have evaluated under the current regulations. (ECF No. 22 at 2.) The ALJ clearly referenced this finding in her decision, noting Plaintiff "could not effectively grasp tools with the right hand . . . ." (R. 114 (citing Dr. Paz's evaluation).) Plaintiff now asserts it is unclear whether Dr. Paz was referencing "a hand limitation, an arm limitation, or both." (ECF No. 22 at 2.)

---

[10] Generally, "[t]he failure to raise an issue in an opening brief waives that issue" on appeal. *Anderson v. U.S. Dep't of Lab.*, 422 F.3d 1155, 1174 (10th Cir. 2005). The undersigned, however, will briefly address Plaintiff's argument.

12

Plaintiff does not, however, argue this limitation will affect her ability to perform the representative jobs of clerical sorter or filler, neither of which appear to require the extensive use of hand tools. (*See id.* at 2-3.) *See also* DOT § 209.587-010, Addresser, 1991 WL 671797 and DOT § 731.685-014, Stuffer, 1991 WL 679811. Moreover, as noted above, Plaintiff has already agreed the ALJ accounted for any hand limitations found by Dr. Paz, and the undersigned has already found no error in the ALJ's treatment of elbow flexion. To the extent the ALJ erred in not explicitly stating the persuasiveness of any opinion of Dr. Paz, this error is harmless. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161-66 (10th Cir. 2012).

### 2. Dr. Nancy Barton's Opinion

In her decision, the ALJ considered Dr. Barton's mental CE of Plaintiff and found the opinions contained therein persuasive. (R. 115 ("The undersigned finds these opinions persuasive because they are consistent with Dr. Lussier's examinations showing decreased concentration and memory.").) Although the ALJ did not explicitly also describe how the opinion is supportable, *see* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2), it is reasonably clear from her decision that she considered the supportability of Dr. Barton's opinions by thoroughly reviewing the mental status exam and the interview of Plaintiff from which Dr. Barton drew her opinions. (R. 113.) *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (ALJ considers "the objective medical evidence and supporting explanations presented by a medical source" to support her opinion when considering supportability and persuasiveness). More importantly, Plaintiff does not challenge the ALJ's analysis of Dr. Barton's opinions under 20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2) in her opening brief, but rather argues that the ALJ "erred by not incorporating into her RFC a limitation reflecting Claimant's inability to adapt to a workplace situation as found by the mental CE." (ECF No. 16 at 7.)

13

In her summary, Dr. Barton opined that Plaintiff "may experience difficulty with . . . adapting to the demands of a work environment because of her medical issues." (R. 495.) It is unclear in what way the RFC is not specifically designed to curb Plaintiff's expected difficulty adapting to these demands, and Plaintiff has offered no argument explaining how exactly the RFC falls short. Accounting for Plaintiff's expected limitations, the ALJ incorporated numerous exertional, non-exertional, and environmental limitations in the RFC. (R. 109.) This included limiting Plaintiff to jobs requiring only that she be able to "[u]nderstand, remember, and carry out simple and detailed, but not complex, tasks," with only "[o]ccasional interaction with coworkers, supervisors, and the general public." (*Id.*) Each one of these limitations is tailored toward the overarching goal of lessening Plaintiff's difficulty adapting to the demands of a work environment. The ALJ did not commit an error in her evaluation of Dr. Barton's opinions, and there is substantial evidence supporting the ALJ's determination of Plaintiff's RFC. As such, Plaintiff's argument fails.

       **3.**     **Dr. Kyla Lussier's Opinion**

Plaintiff also takes issue with the ALJ's consideration of Dr. Lussier's purported opinion regarding Plaintiff's ability to continue work. (ECF No. 16 at 8.) The statement appears on a *Certificate for Return to Work or School* form, where Dr. Lussier simply noted, with no evaluation or analysis, that Plaintiff had been under her care for the past three months and was "unable to return to work due to chronic illness." (R. 554.) The ALJ rejected this opinion as vague, lacking in reasoning and discussion regarding whether Plaintiff could do other work, and as an issue reserved for the Commissioner. (R. 115.) Plaintiff argues this was incorrect, first, because the ALJ supposedly relied on Dr. Lussier's "opinion" to support her finding that Dr. Barton's opinions were persuasive (ECF No. 16 at 8), and second, because even if Dr. Lussier's finding was one

14

reserved for the Commissioner, the ALJ was required to weigh the opinion (*id.* at 9). Neither of these arguments is correct.

First, Plaintiff misreads the ALJ's analysis. The ALJ did not hold that Dr. Barton's opinions were consistent with Dr. Lussier's "opinion"—she found they were consistent with Dr. Lussier's examinations of Plaintiff regarding concentration and memory. (R. 115.) Unless offered in accordance with 20 C.F.R. §§ 404.1513(a)(2) and 416.913(a)(2), examination records are not inherently medical opinions. Plaintiff has highlighted no portion of Dr. Lussier's examination record that comports with these requirements. Thus, the undersigned finds no error in the ALJ's reliance on Dr. Lussier's examination notes to support Dr. Barton's opinions.

Second, the ALJ was correct in finding that Dr. Lussier's statement regarding Plaintiff's ability to work was an issue reserved for the Commissioner. (R. 115.) Per 20 C.F.R. §§ 404.1520b(c)(3)(i) and 416.920b(c)(3)(i), statements about whether a claimant is or is not able to work—or perform regular or continuing work—are reserved for the Commissioner. *Id.* As such, Dr. Lussier's "opinion" is considered, by regulation, to be inherently neither valuable nor persuasive, and the ALJ was not required to "provide any analysis about how [she] considered such evidence . . . ." *Id.* §§ 404.1520b(c), 416.920b(c). Again, Plaintiff cites inapplicable case law as standing for the position that the ALJ was required to assign weight to this opinion. (ECF No. 16 at 9.) This argument is incorrect and relies on outdated standards. The ALJ's consideration of Dr. Lussier's statement was proper.

    **C.**    **The ALJ Properly Analyzed Plaintiff's Symptoms**

Lastly, Plaintiff contends the ALJ "failed to properly assess the consistency of Claimant's complaints with the evidence of record" and failed to engage in an analysis under *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987) and *Kepler v. Chater*, 68 F.3d 387 (10th Cir. 1995). (ECF No. 16 at 9-10.) The undersigned disagrees.

When evaluating a claimant's symptoms and subjective complaints, the ALJ uses a two-step process.[11] *See* Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017); *see also* 20 C.F.R. §§ 404.1529, 416.929 (regulations governing the evaluation of symptoms). First, the medical signs or laboratory findings must show the existence of a medical impairment(s) that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the symptoms alleged. SSR 16-3p, at *3. Second, once such impairment(s) is established, the ALJ must evaluate the intensity and persistence of the symptoms, so she can determine how the symptoms limit the claimant's capacity to work. *Id.* at *4.

Factors the ALJ should consider as part of the symptom evaluation include: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of medications; (v) treatment aside from medication; (vi) any other measures the claimant has used to relieve the symptoms; and (vii) any other factors concerning functional limitations and restrictions due to pain or other symptoms. *Id.* at *7-8. The ALJ's findings regarding symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler*, 68 F.3d at 391). However, a "formalistic factor-by-factor recitation of the evidence" is not required "[s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's" symptoms. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Because subjective symptom findings are "peculiarly the province of the finder of fact," reviewing courts should "not upset such

---

[11] Though Tenth Circuit precedent has characterized this as a three-step process, *Keyes-Zachary*, 695 F.3d at 1166-67 (citing *Luna*, 834 F.2d at 163-64), the analysis under SSR 16-3p comports with *Luna*, *see Paulek v. Colvin*, 662 F. Appx. 588, 593-94 (10th Cir. 2016) (unpublished). The term "credibility," however, is no longer used to describe this analysis. SSR 16-3p, at *2.

16

determinations when supported by substantial evidence." *Cowan*, 552 F.3d at 1190 (quoting *Kepler*, 683 F.3d at 391).

Here, the ALJ's opinion adequately accounted for Plaintiff's symptoms. She determined, first, that Plaintiff's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms . . . ." (R. 109-11 (relying on statements made in Plaintiff's *Adult Disability Report* (R. 243-52) and the December 2019 hearing).) Next, the ALJ considered whether Plaintiff's subjective statements regarding her mental and physical limitations, when evaluated alongside all other objective evidence, led to the conclusion that Plaintiff was disabled. Though she ultimately found that "claimant's statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record" (R. 111), she sufficiently considered Plaintiff's subjective complaints. In accordance with 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), the ALJ weighed factors such as Plaintiff's daily activities (R. 110-11, 113, 115); the location, duration, frequency, and intensity of Plaintiff's symptoms (R. 110-12, 114); precipitating and aggravating factors (R. 110-11); the type, dosage, and effectiveness of medication Plaintiff took to alleviate her symptoms (R. 113-15); the treatment she received for symptom relief (R. 111-15); and other measures she used to relieve her symptoms (R. 110-11, 114). Only in light of this analysis did the ALJ hold that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not wholly consistent with the record. Contrary to Plaintiff's contention, this was an adequate evaluation under 20 C.F.R. §§ 404.1529 and 416.929.

## VI.   Conclusion and Recommendation

The undersigned Magistrate Judge finds that the ALJ applied the correct legal standards and that substantial evidence supports the Commissioner's decision. Accordingly, the undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED.**

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by January 24, 2022.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.*; *see also* 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

**SUBMITTED** this 10th day of January, 2022.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT