UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SYREETTA W. D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-CV-0530-NDF-SH |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Commissioner of Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Now before the Court is the Report and Recommendation (Dkt. # 23) of the magistrate judge recommending that the Court affirm defendant's decision to deny plaintiff's claim for disability benefits. Plaintiff has filed an objection (Dkt. # 24) to the report and recommendation, and asks the Court to reject the report and recommendation and either find in her favor or remand to the agency to correct the errors. Defendant has filed a response (Dkt. # 25) to plaintiff's objection, and the report and recommendation is ripe for review.

Plaintiff's objection focuses on the RFC determined by the ALJ, which plaintiff argues is inconsistent and incomplete. Plaintiff argues it is inconsistent because the RFC limits plaintiff to jobs which require only that she "[u]nderstand, remember, and carry out simple and detailed, but not complex tasks (SVP 1-4)."[1] However, according to plaintiff, this description of tasks cannot

---

[1] "SVP" means "Specific Vocational Preparation" which "is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." U.S. Dep't of Labor Office of Administrative Law Judges Law Library, *Dictionary of Occupational Titles* (4th Ed. Rev. 1991) – Appendix C. https://www.dol.gov (accessed April 11, 2022). As examples

1

require an SVP of three or four. Plaintiff argues the RFC is incomplete because the ALJ ignored plaintiff's right elbow surgery. Given the narrow focus of plaintiff's objection, that will be the Court's focus as well. Dkt. # 24.

## I.  BACKGROUND

Plaintiff filed applications with the Social Security Administration seeking disability and supplemental security income benefits, and she alleged that her primary disabilities were fibromyalgia, vertigo, anxiety and arm surgery with loss of function. Dkt. # 12-5, pp. 7-26.[2] Plaintiff's alleged disability began on August 1, 2017. *Id*. at p. 7. Plaintiff's claim was denied initially and upon reconsideration, and she requested a hearing before an administrative law judge (ALJ). Dkt. # 12-3, pp. 2-55 & Dkt # 12-4, p. 24.

On December 16, 2019, plaintiff appeared at a hearing before an ALJ where she was represented by counsel. Dkt. # 12-2, p. 21. Plaintiff's counsel made a brief opening statement pointing out the lack of medical evidence because plaintiff lacks insurance and has been limited to the treatment she can receive at her clinic. *Id*. at p. 26. However, counsel advised the ALJ to rely on the consultative psychiatric evaluation, and the finding that plaintiff's prognosis is "guarded" which counsel argued is consistent with marked limitations. *Id*.

During the hearing, plaintiff testified that, in April 2018, she was prescribed a brace to wear on her right arm by the doctor that did the surgery. *Id*. at p. 36. She wears the brace about every two days when her arm hurts, provided that her shoulder doesn't hurt from the brace (the

---

of time required, Level 1 jobs require a short demonstration only; Level 2 jobs require anything beyond short demonstration up to and including 1 month; Level 3 jobs require over 1 month up to and including 3 months; and Level 4 jobs requires over 3 months up to and including 6 months. *Id*.

[2] All page numbers refer to the docket page number, not the administrative record page number.

pain is likely associated with her fibromyalgia, but the record is unclear). *Id*. at pp. 37. No future surgery has been recommended.[3] *Id*. at p. 36.

      The ALJ called a vocational expert (VE) to testify. The VE addressed plaintiff's past work, including the exertion required. *Id*. at p. 42. The ALJ asked the VE to consider a hypothetical person who is of the same age, work history and education as plaintiff, who could perform light work, and the VE testified such a person could perform the past work done by plaintiff as well as additional representative examples of work. *Id.* at 43. The ALJ then took this example but added exertional and mental restrictions: no climbing ropes, ladders, or scaffolds, occasionally climb ramps and stairs, stoop, crouch, crawl, kneel, and balance on uneven, moving, or narrow surfaces, frequently handle and finger with the right upper extremity, understand, remember, and carry out simple and detailed but not complex tasks, occasional interaction with coworkers, supervisors, and the general public, no work involving any exposure to extreme cold temperatures, unprotected heights, or dangerous moving machinery. *Id*. at pp. 43-44. The VE testified that this would preclude plaintiff's past work but that the other representative jobs would be available. The ALJ added an additional limitation to the second hypothetical such that the job was sedentary work. The VE testified to the following representative examples at the sedentary exertional level: clerical sorter (SVP of 2) with 54,000 positions in the national economy; filler (SVP of 2) with 76,000 positions nationally; and assembler (SVP 2) with 58,000 positions nationally. *Id*. at pp. 44-45. Finally, the VE changed the hypothetical to only require occasional (rather than frequent) hand and finger handling with the right upper extremity, and the VE testified that would eliminate the positions identified.

---

[3] Again, the Court's discussion is limited to matters relating to the issues raised by plaintiff.

3

The ALJ entered a written decision denying plaintiff's claim for disability benefits. Dkt. # 12-3, pp. 59-73. The ALJ discussed the five-step sequential evaluation process for determining whether an individual is disabled. *Id*. at pp. 60-61. The ALJ found that plaintiff had not engaged in substantial gainful employment since August 1, 2017, the alleged onset date, and that she had the following severe impairments: vertigo, major depressive disorder, and anxiety disorder. *Id*. at p. 61. The ALJ found that plaintiff had not presented evidence sufficient to establish that her alleged fibromyalgia is a medically determinable impairment. *Id*. at p. 62.

After considering the entire record, the ALJ found that the plaintiff has the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except:

> no climbing ropes, ladders, or scaffolds. Occasionally climb ramps and stairs, stoop, crouch, crawl, kneel and balance on uneven moving, or narrow surfaces. Frequently handle and finger with the right upper extremity. Understand, remember, and carry out simple and detailed, but not complex tasks (SVP 1-4). Occasional interaction with coworkers, supervisors, and the general public. No work involving any exposure to extreme cold temperatures, unprotected heights, or dangerous moving machinery.

*Id*. at p. 64. In making this RFC finding, the ALJ discussed plaintiff's medical records, notably that she had seen Dr. Chalkin in January 2018 and reported her right elbow bothered her. Dkt. # 12-7, p. 104. Dr. Chalkin gave her a right elbow lateral epicondyle injection. Following continued complaints of pain in the right elbow, Dr. Chalkin ordered imaging which revealed tendonitis and a low-grade partial thickness interstitial tear involving the common anterior origin. *Id*. at p. 101. On April 2018, plaintiff had surgery consisting of a right elbow lateral epicondylar release and partial osteotomy of the lateral epicondyle for chronic lateral epicondylitis. *Id*. at p. 94-98. On June 15, 2018, plaintiff had normal neurologic function of the right upper limb and

the elbow was moving better, "lacking less than 10 degrees of extension and [plaintiff] had full flexion." *Id*. at p. 89. Dr. Chalkin recommended plaintiff work on her range of motion and prescribed therapy and a Medrol Dosepak.

Plaintiff saw Dr. Chalkin again on July 2, 2018, and his notes show "[s]he has responded favorably to surgery. She lacks the last few degrees of extension." Dkt. # 12-7, p. 88. Plaintiff had full flexion, full pronation and supination, she had no pain with active extension of the wrist and good power, but she had intermittent ache in the elbow. The MRI and x-rays were normal so there was no treatment aside from an injection. *Id*. Dr. Chalkin noted plaintiff "does have a lack of terminal extension, which may or may not improve over the next six months. … Her extensor lag is about 10 degrees [and] [t]he pain is much improved in the elbow." *Id*. Plaintiff later saw Dr. Ashlin Paz for a consultative examination, and he also noted that plaintiff lacks the last few (10) degrees of extension for her right elbow. *Id.* at p. 189.

In discussing these and other medical records, the ALJ found that the RFC assessment "accommodates [plaintiff's] physical and mental impairments…. [Plaintiff's] testing does not review anything significant. Since her arm surgery, she has no further complaints. Although advised by her surgeon not to wear her brace, the [plaintiff] continues to do so. … [Plaintiff's] allegations and subjective complaints lack consistency with the evidence to the extent that they purport to describe a condition of disability for Social Security purpose." Dkt. # 12-3, p. 71.

The ALJ determined that plaintiff was unable to perform any past relevant work but, considering plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that plaintiff can perform (clerical sorter, filler and

assembler). *Id*. at pp. 71-72. With this, the ALJ found plaintiff was not under a disability from the alleged onset date through the date of the decision. *Id*. at p. 72.

Plaintiff sought review of the ALJ's adverse decision by the Appeals Council, but the Appeals Council found no basis under its rules to review the decision. *Id.* at p. 2. Plaintiff filed this case seeking judicial review of the denial of her claim for disability benefits, and the matter was referred to a magistrate judge for a report and recommendation. The magistrate judge has recommended that the Commissioner's decision be affirmed. Dkt. # 23.

## II. LEGAL STANDARD

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. However, the parties may object to the magistrate judge's recommendation within 14 days of service of the recommendation. *Schrader v. Fred A. Ray, M.D., P.C.*, 296 F.3d 968, 975 (10th Cir. 2002); *Vega v. Suthers*, 195 F.3d 573, 579 (10th Cir. 1999); 28 U.S.C. § 636(b)(1). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

## DISCUSSION

Plaintiff objects to the magistrate judge's report and recommendation that the Commissioner's decision to deny her claim for disability benefits should be affirmed. Dkt. # 24. Plaintiff asks that benefits be awarded or, in the alternative, the matter be remanded to the ALJ to correct the errors.

The Social Security Administration has established a five-step process to review claims for disability benefits. *See* 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five-step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [*Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." *Id.* An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." *Allen*, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work. *See id.* Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient residual functional capability to perform other work in the national economy. *See id.*

*Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

At step five, the ALJ must consider a claimant's RFC, age, education, and work experience to determine if other work exists that a claimant is able to perform. *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). If the claimant can adjust to work outside of her past relevant work, the ALJ shall enter a finding that the claimant is not disabled. 42 U.S.C. § 423(d)(2)(A). However, the ALJ must find that a claimant is disabled if insufficient work exists in the national economy for an individual with the claimant's RFC. *Allen*, 357 F.3d at 1144. Defendant bears the burden to present sufficient evidence to support a finding of not disabled at step five of the review process. *Emory v. Sullivan*, 936 F.2d 1092, 1094 (10th Cir. 1991).

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his decision is supported by substantial evidence. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir.

7

...

2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994). "It requires more than a scintilla, but less than a preponderance. . . . The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal citations omitted). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). However, so long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek v. Berryhill*, -- U.S. --, 139 S.Ct. 1148, 1152 (2019).

      As noted above, plaintiff argues the RFC determined by the ALJ is inconsistent and incomplete. Plaintiff argues the RFC is inconsistent because it limits plaintiff to jobs which require only that she "[u]nderstand, remember, and carry out simple and detailed, but not complex tasks (SVP 1-4)," but such tasks cannot require an SVP of three or four. Plaintiff argues the RFC is incomplete because the ALJ ignored plaintiff's limited range of motion following her right elbow surgery and, because of this, the limitation was not included in the hypothetical presented to the VE. Plaintiff argues the law is clear that hypotheticals must include all impairments and limitations borne out by the evidentiary record, and the failure to do so constitutes reversible error.

### RFC – Consistency

Plaintiff relies on two unpublished district court cases for her consistency argument, however the Court finds neither case persuasive or on point. The first case, *Lamb v. Commissioner of SSA*, remanded the ALJ decision to resolve a conflict between the VE's testimony and the DOT job descriptions regarding contact with people. Civ-18-293-RAW-KEW, 2020 WL 1330236, at *6 (E.D. Okla. Mar. 4, 2020). The Court also directed that the ALJ "confirm with the VE that a claimant who can perform 'simple and some complex tasks' but 'not … very detailed and complex instructions' can perform jobs with a reasoning level of three." *Id*. In contrast with *Lamb*, this case does not implicate Reasoning levels as defined in the Dictionary of Occupational Titles, but Specific Vocational Preparation (SVP) time levels.

The second case, *Adair v. Berryhill*, also does not help plaintiff. Civ-16-1119-R, 2017 WL 9802866 (W.D. Okla. Dec. 5, 2017). As in *Adair*, plaintiff does not explain what information in the objective medical records (or any other evidence) requires a finding that plaintiff could not perform semi-skilled work.[4] *Id.* at * 4. Further, (again as in *Adair*), even if the ALJ did err with regard to the RFC parenthetical reference to SVP 1-4, such error is harmless because neither the VE nor the ALJ relied on any semi-skilled occupations in determining Plaintiff could perform work available in the national economy. Consequently, this claim of error is rejected.

### Right Elbow Range of Motion

Plaintiff argues the ALJ erred in ignoring plaintiff's right elbow range of motion limitation during the sequential analysis. Turning first to step two, the ALJ's failure to address the right elbow issue as an impairment does not constitute reversible error because the ALJ found plaintiff

---

[4] Semi-skilled work corresponds to an SVP of 3-4. *See* SSR 00-4p, 2000 WL 1898704, at *3.

suffered at least one severe impairment. Given this finding, the ALJ then considers the combined effect of all plaintiff's impairments in step three to determine if any or all impairments are equivalent to a condition listed in the appendix of the relevant disability regulation. *See Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) ("the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe").

As to the argument that the ALJ erred at step three, the Court is also unpersuaded. Plaintiff's right elbow disorder is best described as "a lack of terminal extension" estimated at about 10 degrees. Dkt. # 12-7, p. 88. Plaintiff does not argue that the ALJ could have found any relevant listing satisfied had the right elbow disorder been considered. This is likely because there is no evidence in the record that would support a finding that plaintiff meets Listing 1.02 (which, for an elbow, would require a major dysfunction resulting in inability to perform fine and gross movements effectively). There is no major joint disfunction present as shown by plaintiff's consultative examination, which was normal with the exceptions of the right elbow extension (10%) and an ineffective grasp of tools such as a hammer with plaintiff's right hand. *Id*. at p. 191. Consequently, "no reasonable administrative factfinder, following the correct analysis could have" found plaintiff's right elbow issue to meet Listing 1.02. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir. 2005) (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)).

Turning next to step four, the ALJ found that plaintiff's impairments prevent her from performing her past relevant work. Thus, there is no error that can be alleged in step four.

Finally, plaintiff argues her range of motion issue should have been considered in step five, in terms of the hypothetical question posed to the VE and the ultimate RFC. The ALJ discussed the elbow surgery and its results:

> [Plaintiff's] testing does not review anything significant. Since her arm surgery, she has no further complaints. Although advised by her surgeon not to wear her brace, the [plaintiff] continues to do so. … [Plaintiff's] allegations and subjective complaints lack consistency with the evidence to the extent that they purport to describe a condition of disability for Social Security purpose.

Dkt. # 12-3, p. 71. There is no dispute that plaintiff has regained 90% of her elbow extension ability. Dkt. # 12-7, p. 88. Further, shortly after her surgery, plaintiff had normal neurologic function of the right upper limb and an examination showed the elbow was moving better. *Id*. at p. 89. The MRI and x-rays done following surgery were normal and the pain was much improved. *Id*. at p. 88. Notwithstanding this favorable outcome, the objective evidence is undisputed that plaintiff still suffers from a lack of terminal extension estimated at about 10 degrees. This insufficiency in arm extension arguably affects plaintiff's ability to reach effectively to perform sedentary work. Given that the ALJ found plaintiff was restricted to sedentary work, the failure to discuss any reaching limitations is particularly problematic. Reaching is "required in almost all jobs," so significant limitations on reaching … may eliminate a large number of occupations…." SSR 85-15, 1985 WL 56857 at *7. Consequently, an ALJ should address potential reaching limitations in cases where the claimant can only perform sedentary work. *See Saiz v. Barnhart*, 392 F.3d 397, 400 (10th Cir. 2004).

With all this said, however, plaintiff may be able to perform the type of reaching contemplated in the jobs identified by the VE considering that she retains 90% of the ability to extend her arm. But because the VE was not asked about reaching limitations, the Court cannot confidently find that substantial evidence supports the ALJ's decision. *See Harris v. Colvin*, Civ-12-856-F, 2013 WL 4048990, at *3 (W.D. Okla. Aug. 9, 2013) (finding the ALJ's failure to discuss reaching limitations particularly harmful where the jobs the VE testified plaintiff could perform

required frequent reaching); *Hosey v. Astrue*, Civ. Action No. 11-cv-207, 2012 WL 7827840, at *26 (N.D.W. Va. Aug. 31, 2012), *report and rec. adopted,* 2013 WL 1316912 (N.D.W. Va. Mar. 29, 2013) (reversing ALJ decision because the ALJ failed to discuss over-the-head reaching limitations, based on a 90 degree of abduction range of motion, in part because the VE was not asked about reaching restrictions in the hypothetical question).

For all the above-stated reasons, this Court's review of the record demonstrates that the decision to deny benefits, as it relates to plaintiff's right elbow range of motion limitation only, is not supported by substantial evidence.

**IT IS THEREFORE ORDERED** that the Report and Recommendation (Dkt. # 23) is **REJECTED**, and the Commissioner's decision to deny plaintiff's claim for disability benefits is **REVERSED AND REMANDED** to the Commissioner for further proceedings consistent with this Order.   A separate judgment is entered herewith.

**DATED** this 12th day of April, 2022.

*[signature: Nancy D. Freudenthal]*

NANCY D. FREUDENTHAL
UNITED STATES DISTRICT JUDGE